# In the United States Court of Federal Claims

| | | |
|---|---|---|
| JOSHUA LUGER, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) | No. 26-30 (Filed: September 2, 2026) |

Paul H. Myerchin, Bormann, Myerchin, Espeseth & Edison, LLP, Bismarck, ND, with whom was T. Michael Andrews, The Ragnar Group, LLC, Richmond, VA, for Plaintiff.

Patrick S. Angulo, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were Albert S. Iarossi, Assistant Director, Patricia M. McCarthy, Director, and Brett A. Shumate, Assistant Attorney General for Defendant. Amy Kania, Attorney-Advisor, Office of the Solicitor, Department of the Interior, Northeast Region, Twin Cities, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Judge.**

The plaintiffs in this action are Warrior Wash & Emporium, LLC ("Warrior Wash"), a car wash and convenience store located in the City of Fort Yates, North Dakota, within the boundaries of the Standing Rock Sioux Reservation, and its owner, Joshua Luger ("Plaintiffs"). They allege that the Bureau of Indian Affairs ("BIA") effected a Fifth Amendment taking of their property when it failed to return to them certain "industrial hemp products" seized in connection with a criminal investigation after that investigation allegedly had ended and the products were allegedly no longer needed for law enforcement purposes. Compl. ¶¶ 2, 8, ECF No. 1. Plaintiffs further allege that the government violated its obligation under the Fifth Amendment to compensate them for the property taken.

Currently before the Court is the government's motion to dismiss for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1) and for failure to state a claim pursuant to RCFC 12(b)(6). Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 6. For the reasons set forth below, the Court concludes that it has subject-matter jurisdiction over Plaintiffs' complaint but that they have failed to state a claim for violation of the Fifth Amendment. The government's motion to dismiss based on RCFC 12(b)(6) is therefore **GRANTED**, and the complaint is **DISMISSED** with prejudice.

## BACKGROUND[1]

### I. Facts

As noted above, Warrior Wash is a car wash and convenience store owned by Plaintiff Joshua Luger. Compl. ¶¶ 2, 8. At the time of the events giving rise to this action, Warrior Wash had been offering for sale what Plaintiffs characterize as "industrial hemp products." Id. ¶ 9. Plaintiffs allege that the sale of these products was lawful under the Agricultural Improvement Act of 2018, Pub. L. No. 115-334, 132 Stat. 4490, as well as Title 43 of the Standing Rock Tribal Code. Id.

On or about December 21, 2023, BIA law enforcement personnel raided Warrior Wash and seized the products in connection with a criminal investigation. Id. ¶ 12.[2] Mr. Luger was subsequently charged with the criminal sale of drugs in the Standing Rock Sioux Indian Reservation Criminal Court. See Pls.' Ex. 3, at 2, ECF No. 1-1 (Case No. 23-336880).[3]

According to the complaint, on or about May 10, 2024, the special prosecutor assigned to handle Mr. Luger's case dropped the charges against him and secured the dismissal of the case. Id. ¶ 16 (citing Pls.' Ex. 3). Plaintiffs allege that the special prosecutor based her conclusion "that no violation of the [Tribal Criminal] Code occurred" on a "certificate of analysis" from KCA Laboratories, which Mr. Luger's attorney supplied to her. Id.; Pls.' Ex. 3, at 1.

On the following Monday, May 13, the special prosecutor notified one of the BIA agents involved in the case that the charges against Mr. Luger had been dismissed and asked that the BIA "[p]lease return all evidence seized in this matter to Mr. Luger immediately." Pls.' Ex. 4, at 1; Compl. ¶ 17. That same day, Mr. Luger submitted a "Petition for Return of Property" to the Standing Rock Sioux Tribal Court, which the tribal court judge granted on May 14. See Pls.' Ex. 5, at 1; Compl. ¶ 18. In his order granting the petition, the tribal court judge purported to direct "BIA Law Enforcement personnel" to "return the [industrial hemp products] to [Mr. Luger] as soon as practicable." Pls.' Ex. 5, at 1. Thereafter, on or about May 16, 2024, Mr. Luger secured the signature of the special prosecutor indicating that she supported the petition and noting that the tribe had dismissed the charges against Mr. Luger. Compl. ¶ 18; Pls.' Ex. 6, at 1.

---

[1] The facts set forth in this Opinion are based on the allegations in Plaintiffs' complaint, which the Court accepts as true for purposes of resolving the government's motion to dismiss.

[2] Plaintiffs identify the seized "industrial hemp products" as consisting of 1,280 "pre-rolls," 2 "thc disposables," and 6 "gummy containers." Pls.' Ex. 2, ECF No. 1-1.

[3] The charge against Mr. Luger was based on a provision of tribal criminal code which states: "A person commits the offense of criminal sale of drugs if he/she sells, barters, exchanges, gives away, or offers to sell, barter, exchange or give away any drug no matter how small an amount." Standing Rock Sioux Tribal Code of Justice § 4-802 (2021), https://www.standingrock.org/wp-content/uploads/2021/09/TitleIVCriminalOffensesSexOffendersOrdinance2020-4-001ResolutionNo176-21.pdf. A "drug" is defined in the tribal criminal code as "any controlled substance defined and/or described in the Uniform Controlled Substances Act, 21 U.S.C. § 812, as updated, without prior authorization." Id. § 4-801(7).

About a week later, on May 20, 2024, Mr. Luger went to the BIA law enforcement center in Fort Yates to make another attempt to recover the seized property. Compl. ¶ 19. Plaintiffs allege that the BIA employee to whom Mr. Luger spoke indicated the BIA agents who seized the property "had made up their minds to disregard the [Tribal] Court's Order and Special Prosecutor Maule's instructions" and were "adamant that they were not going to release Luger's seized property." Id. ¶ 20.

Mr. Luger filed another motion in tribal court for the return of the seized property at the end of May. Id. ¶ 21. This time, on June 10, 2024, the tribal court judge dismissed the motion, citing the tribal court's lack of jurisdiction over the federal government, i.e., the BIA. Id.

Plaintiffs allege that the "industrial hemp products" that the BIA seized at the end of December 2023 and refused to return had a shelf life of approximately six months. Id. ¶ 22. They further allege that as a result of the BIA's "brazen disregard" of the directives from the tribal court and the special prosecutor, the hemp products have become "worthless" and "unsuitable for sale." Id.

The products BIA seized have never been returned to Plaintiffs. In its motion to dismiss, the government represents that it is BIA's intention to dispose of the products as contraband. Def.'s Mot. at 3–4 (first citing 21 U.S.C. § 881(f); and then citing Off. of L. Enf't & Sec., Dep't of the Interior, 446 Departmental Manual: Law Enforcement and Security, Evidence Management ch. 7 (2021)).

## II. Prior Proceedings

On August 7, 2025, Plaintiffs filed a complaint in the United States District Court for the District of North Dakota. Luger v. United States (Luger I), No. 1:25-cv-00193 (D.N.D. Dec. 15, 2025). They alleged that the seizure and retention of the "industrial hemp products" offered for sale at Warrior Wash constituted an "unconstitutional taking." Complaint ¶¶ 34–39, Luger I, No. 1:25-cv-00193, ECF No. 1. In addition, Plaintiffs claimed that BIA engaged in malicious prosecution and abuse of process. Id. ¶¶ 41–56.

A few days after they filed suit in the district court, on August 12, 2025, Plaintiffs filed a complaint with the Court of Federal Claims. Luger v. United States (Luger II), 178 Fed. Cl. 726 (2025) (No. 25-1345). The complaint included one count alleging an "unconstitutional taking" based on the seizure and retention of their property. Complaint, Luger II, 178 Fed. Cl. 726 (No. 25-1345), ECF No. 1. The claims for malicious prosecution and abuse of process that were in the district court complaint were omitted from the new complaint. Id.

On November 4, 2025, this Court dismissed Plaintiffs' complaint pursuant to 28 U.S.C. § 1500 based on lack of subject-matter jurisdiction. Luger II, 178 Fed. Cl. 726. That provision bars this Court from exercising "jurisdiction of any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States." 28 U.S.C. § 1500.

Plaintiffs subsequently filed a notice of voluntary dismissal of the suit they had brought in the district court. Notice of Voluntary Dismissal, Luger I, No. 1:25-cv-00193, ECF No. 14. The case was dismissed without prejudice on December 15, 2025. Order of Dismissal, Luger I, No. 1:25-cv-00193, ECF No. 15.

## III. Present Proceedings

Plaintiffs filed the instant complaint on January 9, 2026, about a month after they voluntarily dismissed their complaint in district court. Compl., ECF No. 1. Their complaint is essentially identical to the one the Court dismissed in Luger II in accordance with 28 U.S.C. § 1500. Compare Compl., with Complaint, Luger II, 178 Fed. Cl. 726 (No. 25-1345), ECF No. 1. It contains a single claim for relief that cites the Fifth Amendment's Takings Clause. Compl. ¶¶ 30–33. Plaintiffs' theory is that—whether or not the government had probable cause to seize the "industrial hemp products" in the first instance—its failure to return the property to Mr. Luger after the tribal court dismissed the charges against him on May 10, 2024, effected a Fifth Amendment taking of the property for which they are owed compensation. Id.

Plaintiffs' complaint also includes a number of allegations of improper conduct by BIA in connection with the seizure and retention of their property, as well as Mr. Luger's prosecution. For example, Plaintiffs characterize the decision to charge Mr. Luger as an act of "law-fare" and assert that the charge was "groundless" and "pretextual." Id. ¶ 14. In addition, Plaintiffs allege that BIA agents failed to follow agency guidelines that required them to field test and/or submit for testing the seized products, and as a result, the government lacked probable cause to charge Mr. Luger with the criminal sale of drugs in tribal court. Id. ¶ 15.

Plaintiffs allege that the "[t]he amount of property unlawfully seized (industrial hemp product) from Luger and/or Warrior Wash totaled approximately $29,778.98." Id. ¶ 32; see also Pls.' Ex. 2, at 1. They further claim that "[a]s a direct and proximate result of the Defendant's misconduct and abuse of authority," they sustained other damages, "economic and non-economic, including, but not limited to, substantial attorney's fees, emotional distress, humiliation, harm to reputation, worry, anxiety, sleepless nights, lost product/inventory, lost earnings, and lost productivity." Compl. ¶ 33.

## DISCUSSION

## I. Motion to Dismiss Based on Lack of Subject-Matter Jurisdiction

As noted above, the government has filed a motion to dismiss Plaintiffs' complaint under RCFC 12(b)(1). It argues that this Court "lacks jurisdiction over plaintiffs' takings claim because the claim sounds in tort." Def.'s Mot. at 1. In addition, the government contends that the Court lacks jurisdiction because Plaintiffs did not exhaust the remedy available to them under Rule 41(g) of the Federal Rules of Criminal Procedure before they filed the present lawsuit. Id. at 9–11. That Rule provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return" by filing a motion in the district where the property was seized. Fed. R. Crim. P. 41(g).

For the reasons set forth below, the Court concludes that Plaintiffs have put forward a non-frivolous claim that arises under the Fifth Amendment's Takings Clause which this Court

has jurisdiction over pursuant to the Tucker Act. It further finds that the Court's exercise of that jurisdiction is not conditioned on Plaintiffs first filing a motion for the return of the property under Rule 41(g). Therefore, this Court has jurisdiction over Plaintiffs' claim, and the government's arguments based on lack of subject-matter jurisdiction are rejected.

### A. Standards for Ruling on a Motion to Dismiss Under RCFC 12(b)(1)

When ruling on a motion to dismiss for lack of subject-matter jurisdiction, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)). Where jurisdictional facts are controverted, the court "may consider relevant evidence in order to resolve the factual dispute." Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988); see also Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991) (finding that a court may "inquire into jurisdictional facts" in ruling on a motion to dismiss under RCFC 12(b)(1)). It is a plaintiff's burden to establish jurisdiction. Rocovich, 933 F.2d at 993 (citing KVOS, Inc. v. Associated Press, 299 U.S. 269, 278 (1936)).

### B. The Government's Contention that Plaintiffs' Claims Are Not Within the Court's Jurisdiction Because They Sound in Tort

The Tucker Act grants the United States Court of Federal Claims authority "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act serves as both a jurisdictional grant and waiver of the government's sovereign immunity, but it does not supply a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005)). To establish this court's jurisdiction, therefore, a plaintiff "must identify a separate source of substantive law that creates the right to money damages," i.e., a constitutional provision, statute, or regulation that "'can fairly be interpreted as mandating compensation by the Federal Government." Id. (first quoting Fisher, 402 F.3d at 1172; and then quoting United States v. Mitchell, 463 U.S. 206, 217 (1983)).

The Takings Clause is a money-mandating source of law for purposes of establishing this Court's jurisdiction under the Tucker Act. John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir. 2006) (citing Morris v. United States, 392 F.3d 1372, 1375 (Fed. Cir. 2004)). Therefore, when a plaintiff presents "a nonfrivolous takings claim founded upon the Fifth Amendment, jurisdiction under the Tucker Act is proper" in this court. Moden v. United States, 404 F.3d 1335, 1341 (Fed. Cir. 2005).

The government does not appear to be claiming that Plaintiffs' takings claim is frivolous—i.e., that it is "so insubstantial, implausible, foreclosed by prior decisions, or otherwise completely devoid of merit as not to involve a federal controversy." Id. at 1341–42. Instead, it argues that their complaint, despite invoking the Takings Clause, actually alleges claims sounding in tort, which lie outside this Court's subject-matter jurisdiction. Def.'s Mot. at

6–9; see also 28 U.S.C. § 1491 (granting jurisdiction for claims "not sounding in tort"). It requests that the complaint be dismissed in its entirety under RCFC 12(b)(1).

The government's jurisdictional argument lacks merit. "When evaluating whether governmental action constitutes a taking, a court employs a two-part test." Casitas Mun. Water Dist. v. United States, 708 F.3d 1340, 1348 (Fed. Cir. 2013). "First, as a threshold matter, the court must determine whether the claimant has established a property interest for purposes of the Fifth Amendment." Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004) (Maritrans Inc. v. United States, 342 F.3d 1344, 1351 (Fed. Cir. 2003)). "Second, after having identified a valid property interest, the court must determine whether the governmental action at issue amounted to a compensable taking of that property interest." Id. (citing Chancellor Manor v. United States, 331 F.3d 891, 902 (Fed. Cir. 2003)).

In this case, Plaintiffs assert a property interest in the "industrial hemp products" they owned and offered for sale at Warrior Wash. They further allege that the government's failure to return the property to them after the charges against Mr. Luger were dropped constitutes a compensable taking under the court of appeals' decision in Jenkins v. United States, 71 F.4th 1367 (Fed. Cir. 2023). In that case, the Federal Circuit held that "[w]hile the United States' police power may insulate it from liability for an initial seizure, there is no police power exception that insulates the United States from takings liability for the period after seized property is no longer needed for criminal proceedings." Id. at 1373; see Compl. ¶ 32 ("Upon the entry of the dismissal in Luger's favor on or about May 10th, 2024, Luger and/or Warrior Wash had a constitutionally protected Fifth Amendment right to be free from unlawful taking of property after it was no longer needed [for] criminal proceedings and to be justly compensated for property taken by the Government."); see also Pls.' Ex. 1, at 1–3 (letter from Plaintiffs' counsel submitted with the complaint, alleging, among other things, a Fifth Amendment taking based on BIA's retention of the "hemp products" after the charge against Mr. Luger was dismissed).

The Court agrees with the government that some of the allegations in Plaintiffs' complaint and the remedies they request lie outside of this Court's Tucker Act jurisdiction because they sound in tort and/or because they are unavailable in takings cases. See, e.g., Compl. ¶ 13 (alleging that Mr. Luger's businesses "were disrupted by the unlawful seizure of the lawful industrial hemp product," causing "economic damage to Warrior Wash" as well as his "other business," including, "but not limited to lost profit and lost productivity"); id. ¶ 14 (alleging the charge against Mr. Luger was "groundless," "pretextual," and constituted "law-fare"); id. ¶ 33 ("Plaintiffs sustained damages, economic and non-economic, including, but not limited to, substantial attorney's fees, emotional distress, humiliation, harm to reputation, worry, anxiety, sleepless nights, lost product/inventory, lost earnings, and lost productivity.").

"The multipurpose nature of [a] complaint," however, "d[oes] not deprive the Court of Federal Claims of jurisdiction to entertain the takings claim alleged therein." El-Shifa Pharm. Indus. Co. v. United States, 378 F.3d 1346, 1354 (Fed. Cir. 2004) (holding that the court had Tucker Act jurisdiction over a complaint that asserted a takings claim even though the complaint also characterized the conduct at issue as tortious); cf. Ravi v. United States, 104 F.4th 1359, 1368–69 (Fed. Cir. 2024) (collecting cases showing the court of appeals' "repeated recognition" that "[i]f contractual relations exist, the fact that the alleged breach [of contract] is also tortious

does not foreclose Tucker Act jurisdiction"). Plaintiffs' inclusion of the aforementioned extraneous assertions and unavailable remedies in their complaint, therefore, does not prevent the Court from exercising its Tucker Act jurisdiction over Plaintiffs' Takings Clause claim based on the government's retention of the seized "industrial hemp products" after criminal proceedings ended.

Further, the Court is not persuaded by the government's argument that Plaintiffs' claim must be treated as a tort claim because Plaintiffs do not "concede" that BIA law enforcement agents were engaged in authorized activity when they seized and retained Plaintiffs' property. See Def.'s Mot. at 6–7 (quoting Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 802–03 (Fed. Cir. 1993)); see also Del-Rio Drilling Programs, Inc. v. United States, 146 F.3d 1358, 1362 (Fed. Cir. 1988) ("A compensable taking arises only if the government action in question is authorized."). Contrary to the government's assertion, Plaintiffs here expressly acknowledge in the complaint that "[a]t all material times for the purposes of this action," the law enforcement officers of the BIA were "acting within the scope of their office." Compl. ¶ 3. Further, as the court of appeals explained in Del-Rio Drilling Programs:

> In holding that ultra vires conduct cannot give rise to a Fifth Amendment taking, the courts have drawn an important distinction between conduct that is "unauthorized" and conduct that is authorized but nonetheless unlawful. Merely because a government agent's conduct is unlawful does not mean that it is unauthorized; a government official may act within his authority even if his conduct is later determined to have been contrary to law.

146 F.3d at 1362.

The government cites Livingston v. United States, 167 Fed. Cl. 604 (2023), as support for its contention that the "true nature" of Plaintiffs' claim is not a taking but a tort. Def.'s Mot. at 8; Def.'s Reply at 2–4, ECF No. 8. In that case, another judge on this court determined the "true nature" of the complaint before her by comparing it to an earlier complaint the same plaintiff had filed and voluntarily dismissed that had challenged the seizure of the plaintiff's property as "negligent" and "improper" but did not mention the Takings Clause. 167 Fed. Cl. at 616–17, 623–25, 639. The court in Livingston noted that the subsequent complaint before her did not include the allegations of negligence or improper conduct. Id. at 639. But in place of those allegations, the court believed, the plaintiff had substituted only a "formulaic recitation of the elements of a Fifth Amendment taking claim." Id.

This Court is not bound by Livingston and, in any event, does not view the takings allegations in the complaint in this case as merely "formulaic." To the contrary, for the reasons set forth above, the facts alleged by Plaintiffs assert a non-frivolous takings claim grounded in the court of appeals' reasoning in Jenkins. The government's contention that the Court lacks jurisdiction to consider Plaintiffs' Takings Clause claim because that claim "sounds in tort" is therefore without merit.

### C. The Government's Argument that Plaintiffs' Claims Are Not Within the Court's Jurisdiction Because Plaintiffs Failed to Properly Exhaust Remedies

In addition to its contention that Tucker Act jurisdiction does not lie because Plaintiffs' claims sound in tort, the government argues that—to the extent Plaintiffs assert a takings claim—this Court lacks jurisdiction over it because Plaintiffs "have failed to properly exhaust their remedies." Def.'s Mot. at 9. "[T]hose remedies," it contends, "are provided by Rule 41(g) of the Federal Rules of Criminal Procedure," which states that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return" by filing a motion "in the district where the property was seized." Def.'s Mot. at 9–10 (quoting Fed. R. Crim. P. 41(g)).

In Jenkins v. United States, the court of appeals dubbed the question of "whether the Rule 41(g) remedy is a mandatory remedy" an open one. 71 F.4th at 1375.[4] For the reasons set forth below, the Court finds that resort to Rule 41(g) is not required as a condition of this Court's exercise of its Tucker Act jurisdiction over Plaintiffs' takings claim.

The doctrine of exhaustion includes both statutory exhaustion, which is jurisdictional, and prudential exhaustion, which is not. See McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Exhaustion is required "[w]here Congress specifically mandates" it. Id. (first citing Coit Indep. Joint Venture v. Fed. Sav. & Loan Ins. Corp., 489 U.S. 561, 579 (1989); and then citing Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 502 n.4 (1982)). "But where Congress has not clearly required exhaustion, sound judicial discretion governs." Id. (first citing McGee v. United States, 402 U.S. 479, 483 n.6 (1971); and then citing Patsy, 457 U.S. at 518). "Of 'paramount importance' to any exhaustion inquiry is congressional intent." Id. (quoting Patsy, 457 U.S. at 501).

The government does not argue that Congress specifically mandated that those with takings claims like Plaintiffs' must exhaust the Rule 41(g) process before bringing their claims here. It cites nothing in the Tucker Act or in the relevant money-mandating provision of law (the Takings Clause of the Fifth Amendment) that requires them to first attempt to secure the return of the property they allege has been taken by filing a motion in district court under Rule 41(g).

Instead, the government places its reliance on an irrelevant principle: that where Congress provides "'a precisely drawn, detailed statute' that 'contains its own judicial

[4] In its motion to dismiss, the government misstates the court of appeals' holding, asserting that "[t]he Federal Circuit has recently reaffirmed the position that a claimant cannot bring a takings claim until remedies are exhausted." Def.'s Mot. at 9 (citing Jenkins, 71 F.4th at 1374). In fact, Jenkins held that "[t]here is no takings liability for government retention of property," but only "if the party whose property was seized fails to and is required to exhaust remedies provided by the federal government." Jenkins, 71 F.4th at 1374 (emphases added). As noted above, the Federal Circuit expressly declined to decide whether such exhaustion was, in fact, required. Id. at 1375 ("[W]e do not decide whether the Rule 41(g) remedy was required."). Instead, it remanded the case to the district court to develop the record regarding whether the plaintiff had received notice that the seized property (two cars) was no longer needed for the criminal investigation or that it was available for pickup. Id.

remedies,'" a plaintiff must pursue those remedies and cannot rely on the general grant of jurisdiction contained in the Tucker Act. See Def.'s Mot. at 9 (quoting United States v. Bormes, 568 U.S. 6, 12 (2012)). In that circumstance, the "'specific remedial scheme establishes the exclusive framework for the liability Congress created under the statute' and 'displace[s]' the Tucker Act." Id. (alteration in original) (quoting Bormes, 568 U.S. at 12); see also Horne v. Dep't of Agric., 569 U.S. 513, 527–28 (2013) (concluding that, if a law provides a "comprehensive remedial scheme," it may "withdraw[] Tucker Act jurisdiction over [a plaintiff's] takings claim").

But Congress did not enact any such specific remedial scheme for Takings Clause cases that involve the government's retention of property it seized in a criminal investigation but no longer needs for the criminal case. Rule 41(g) is not part of any such scheme. Indeed, it does not provide a remedy for the wrong Plaintiffs allege here—the failure to compensate them for a taking of their property.

The government points out that several Court of Federal Claims decisions have treated the pursuit of a remedy under Rule 41(g) as "a jurisdictional prerequisite" to bringing suit here under the Tucker Act. Def.'s Mot. at 10–11. In particular, the government cites Duszak v. United States, 58 Fed. Cl. 518, 521 (2003), and several subsequent decisions that relied (uncritically) on Duszak's holding. Def.'s Mot. at 11–12 (first citing Garcia Carranza v. United States, 67 Fed. Cl. 106, 111 (2006); and then citing Carter v. United States, 62 Fed. Cl. 365, 369 (2004)). But these decisions (none of which are binding on this Court) rely on precedent that the Supreme Court has either expressly overruled or otherwise discredited.

In Duszak, members of the U.S. Marshals Service entered the plaintiff's apartment to search for an individual who had an outstanding bench warrant. 58 Fed. Cl. at 519. In the course of their search, the Marshals seized and removed certain personal property that belonged to the plaintiff. Id. The plaintiff filed a complaint with this court seeking compensation for the removal of her property under the Fifth Amendment's Takings Clause. Id. The government moved to dismiss the complaint, arguing, among other things, that the takings claim was not ripe for review because she had not invoked the process set forth in Rule 41(g) to secure the return of her property. Id. at 520. The court granted the motion. Id. at 519.

The court explained that "[t]here are 'two independent prudential hurdles to a regulatory taking claim brought . . . in federal court.'" Id. (alteration in original) (quoting Suitum v. Tahoe Reg'l Plan. Agency, 520 U.S. 725, 733–34 (1997)). First, the "property owner must show it has received a 'final decision regarding the application of the [challenged] regulations to the property at issue' from 'the government entity charged with implementing the regulations.'" Id. (alteration in original) (quoting Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank, 473 U.S. 172, 186 (1985), overruled by Knick v. Twp. of Scott, 588 U.S. 180 (2019)). Second, and relevant here, is the requirement that a plaintiff show "that it has sought 'compensation through the procedures . . . provided for doing so.'" Id. (alteration in original) (quoting Williamson Cnty., 473 U.S. at 194). "Until [a] plaintiff has availed herself of this procedure and obtained a final decision with respect to the relief she seeks," the court stated in Duszak, "the taking claim filed in this court is not ripe for decision." Id. at 521 (first citing Suitum, 520 U.S. at 733–34; then citing Williamson Cnty., 473 U.S. at 186; and then citing Greenbrier v. United States, 193 F.3d 1348, 1358 (Fed. Cir. 1999)).

At the outset, the Court questions whether Rule 41(g) can be characterized as a "procedure" that a government entity has provided for individuals seeking compensation for Fifth Amendment takings. A plaintiff cannot secure monetary compensation for a taking under Rule 41(g). Jenkins, 71 F.4th at 1375 (citing Jackson v. United States, 526 F.3d 394, 398 (8th Cir. 2008) (observing that "Rule 41(g) does not allow for monetary damages"). Indeed, the courts of appeals that have addressed the issue have declined to interpret Rule 41(g) as a waiver of sovereign immunity that would permit a claimant to receive damages in lieu of tangible property. See, e.g., Adeleke v. United States, 355 F.3d 144, 151 (2d Cir. 2004) (joining in "the unanimous conclusion of those sister circuits that have addressed the issue: Rule 41(g), which simply provides for the return of seized property, does not waive the sovereign immunity of the United States with respect to actions for money damages relating to such property"); Okoro v. Callaghan, 324 F.3d 488, 491 (7th Cir. 2003) ("No one supposes that Rule 41(g) was intended to waive the sovereign immunity of the federal government."); United States v. Hall, 269 F.3d 940, 943 (8th Cir. 2001) ("Rule 41(e) does not contain the explicit waiver of sovereign immunity required to authorize monetary relief against the government when property cannot be returned."); United States v. Potes Ramirez, 260 F.3d 1310, 1316 (11th Cir. 2001) ("[S]overeign immunity protects the government from money damages sought under Rule 41(e)."); United States v. Jones, 225 F.3d 468, 470 (4th Cir. 2000) ("Rule 41(e) does not contain a waiver of sovereign immunity."); United States v. Bein, 214 F.3d 408, 415 (3d Cir. 2000) ("We reiterate that Rule 41(e) provides for one specific remedy—the return of property."); Pena v. United States, 157 F.3d 984, 986 (5th Cir. 1998) ("Rule 41(e) makes no provision for monetary damages, and we will not read into the statute a waiver of the federal government's immunity from such damages.").[5] The only remedy available to a party that files a successful Rule 41(g) motion is a return of the property that has been taken.

Further, the Supreme Court has since explicitly overruled the primary case upon which Duszak relied—Williamson County. In that case, the Supreme Court held that a property owner pursuing a regulatory takings claim against a local government under 42 U.S.C. § 1983 must first file a claim through the procedure established by the state for securing compensation. It reasoned that "[i]f the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government' for a taking." 473 U.S. at 194–95 (alterations in original) (quoting Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1013, 1018 n.21 (1984)).

The Supreme Court expressly overruled Williamson County in Knick v. Township of Scott, 588 U.S. 180 (2019). It held that "Williamson County was not just wrong," but that "[i]ts reasoning was exceptionally ill founded and conflicted with much of our takings jurisprudence." 588 U.S. at 203. It explained that "[c]ontrary to Williamson County, a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." Id. at 189. The Court further observed that "Williamson County broke with the Court's longstanding position that a property owner has a constitutional claim to compensation at the time the government deprives him of his property" when it "held that there

---

[5] Before Rule 41 was renumbered in 2002, "the procedure under which a person aggrieved by an unlawful search and seizure could move for the return of their property was set forth in Rule 41(e), which utilized language that was nearly identical to the current Rule 41(g)." Carter, 62 Fed. Cl. at 369 n.2.

can be no uncompensated taking, and thus no Fifth Amendment claim actionable under § 1983, until the property owner has tried and failed to obtain compensation through the available state procedure." Id. at 195–96. A takings claim, the Court held, "arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." Id. at 190; see also id. at 189–90 (observing that the Court of Federal Claims has jurisdiction over takings claims "as soon as [a plaintiff's] property has been taken"). Therefore, under Knick, property owners may bring takings claims against local governments under § 1983 as soon as the taking occurs and are not required to exhaust other remedies.

In short, the Court concludes that Plaintiffs' takings claim became ripe as of the time their property was allegedly taken—i.e., when the retention of the "industrial hemp products" was no longer necessary to serve any law enforcement purposes. To be sure, "Congress . . . is free to require plaintiffs to exhaust administrative remedies before bringing constitutional claims." Id. at 195–96 (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). But it has not done so here. Plaintiffs were therefore not required to file a motion for return of the property under Rule 41(g) as a condition of pursuing relief for the uncompensated taking in this Court under the Tucker Act.

## II. Motion to Dismiss Based on Failure to State a Claim

### A. Standard of Review for Motion to Dismiss Under RCFC 12(b)(6)

A complaint may be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When considering a motion to dismiss for failure to state a claim upon which relief may be granted, the Court "must accept as true all the factual allegations in the complaint," and "must indulge all reasonable inferences in favor of the non-movant." Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001). Exhibits attached to a complaint are considered "part of the pleading for all purposes" and must be considered when ruling on a motion to dismiss. Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1325 (Fed. Cir. 2016) (quoting RCFC 10(c)). The court, however, is not required to "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

"To avoid dismissal under RCFC 12(b)(6), a party need only plead 'facts to state a claim to relief that is plausible on its face,' with facts sufficient to nudge 'claims across the line from conceivable to plausible.'" TrinCo Inv. Co. v. United States, 722 F.3d 1375, 1380 (Fed. Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim is plausible on its face when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## B. The Government's Contention that the Seized Products Are Retained Pursuant to the Police Power

The Takings Clause requires compensation only where property has been taken by the government "for public use." AmeriSource Corp. v. United States, 525 F.3d 1149, 1152 (Fed. Cir. 2008) (quoting U.S. Const. amend. V) ("The clause does not entitle all aggrieved owners to recompense, only those whose property has been 'taken for a public use.'"). "Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause.'" Kam-Almaz v. United States, 682 F.3d 1364, 1371 (Fed. Cir. 2012) (quoting AmeriSource Corp., 525 F.3d at 1153); see also Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1331 (Fed. Cir. 2006) ("When property has been seized pursuant to the criminal laws or subjected to in rem forfeiture proceedings, such deprivations are not 'takings' for which the owner is entitled to compensation."). The government's seizure and disposition of contraband is not a taking; it is an exercise of the police power. See Acadia Tech., 458 F.3d at 1332 ("A Customs seizure of goods suspected of bearing counterfeit marks is a classic example of the government's exercise of the police power to condemn contraband or noxious goods, an exercise that has not been regarded as a taking for public use for which compensation must be paid.").

In this case, Plaintiffs allege in their complaint that the products BIA seized and is still holding are not contraband. Compl. ¶¶ 12, 16. Moreover, Plaintiffs allege that the Special Prosecutor dismissed all charges against Mr. Luger and directed that the products be returned to him based on the results of the tests reflected in a lab report attached to their complaint as Exhibit 3. Id. ¶¶ 16–17; Pls.' Ex. 3, at 1. According to Plaintiffs, criminal proceedings have concluded and "the Government has no further need for the property," so "the Government's continued possession of the property amounts to a takings claim." Pls.' Resp. at 10; Compl. ¶ 24.

The government contends that—contrary to the assertions in Plaintiffs' complaint— the so-called "industrial hemp products" the government seized and has refused to return to them are, in fact, contraband. It explains that the products do not fit within the definition of hemp set forth in 7 U.S.C. § 1639o(1). Def.'s Mot. at 15–16. Instead, according to the government, the products are marijuana, which is designated a schedule I controlled substance under 21 U.S.C. § 802(16). Id. Under 21 U.S.C. § 881(f), schedule I controlled substances "shall be deemed contraband and seized and summarily forfeited to the United States."[6]

Ordinarily, in ruling on a motion to dismiss under RCFC 12(b)(6), the Court would accept as true the allegations set forth in the complaint. But in this case, the Plaintiffs' bare

[6] The government represented in its motion to dismiss that as of the date it filed that motion, "BIA's investigation related to the product has closed and BIA intends to dispose of the seized products as contraband in accordance with 21 U.S.C. § 881(f), and the Department of the Interior, Department Manual Part 446, Chapter 7 (Jan. 13, 2021)." Def.'s Mot. at 3–4. At the oral argument on the motion to dismiss, however, the government indicated that it was still in possession of the products due to a litigation hold placed in connection with ongoing litigation in this case and the United States District Court for the District of North Dakota.

allegations that the products the government seized from them are not contraband are contradicted by the laboratory report they submitted along with their complaint.

To qualify as hemp, cannabis must have "a total delta-9 tetrahydrocannabinol [("THC")] concentration of not more than 0.3 percent on a dry weight basis." 7 C.F.R. § 990.1.[7] Any cannabis with a greater than 0.3 percent concentration of total delta-9 THC is not hemp; it is marijuana. See 21 U.S.C. § 802(12); 7 U.S.C. § 1639o(1). In this case, the lab report shows at the second line from the bottom, third column, that the concentration of total delta-9 THC for the seized products is 23.0103 percent. Pls.' Ex. 3, at 3. This value exceeds the legal threshold of 0.3 percent. As such, Plaintiffs' seized "industrial hemp products" do not legally qualify as hemp and instead constitute marijuana, which is contraband.

Plaintiffs' response to the government's motion to dismiss reflects a misapprehension of the standard that is employed to determine whether the products tested were hemp. Specifically, they appear not to understand that "total delta-9 THC" is used to make that determination. See 7 C.F.R. § 990.1 (emphasis added). Instead, they use as the standard a version of delta-9 THC that does not account for the potential conversion of tetrahydrocannabinolic acid ("THCA") into THC. See id. But the USDA expressly considered and rejected an approach that does not take this conversion into consideration when it established the Domestic Hemp Production Program. See Establishment of a Domestic Hemp Production Program, 86 Fed. Reg. 5596, 5602 (Jan. 19, 2021) (to be codified at 7 C.F.R. pt. 990) ("[The agency] is requiring that the total THC, which includes the potential conversion of [THCA] into THC, be reported and used for purposes of determining the THC content of a hemp sample.").

"[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to [RCFC 10(c)], the exhibit prevails." Allen Eng'g Contractor, Inc. v. United States, 115 Fed. Cl. 457, 464 (2014) (quoting Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991)); see also Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1326 (Fed. Cir. 2016) ("[I]t appears to be well settled that when a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit." (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 (3d ed. 2004 & Supp. 2016))). In this case, that means the Court must assume for purposes of ruling on the government's motion to dismiss that the property at issue is contraband as reflected in the lab report. And, because it is contraband, Plaintiffs have failed to state a viable claim under the Takings Clause.

---

[7] Delta-9 THC is the primary intoxicating component of cannabis. 7 C.F.R. § 990.1.

## CONCLUSION

For the foregoing reasons, the government's Motion to Dismiss under RCFC 12(b)(1) is **DENIED**. Its Motion to Dismiss in accordance with RCFC 12(b)(6), ECF No. 6, is **GRANTED**. Plaintiffs' complaint is **DISMISSED with prejudice**.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge